UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
REGINA LEWIS,

                           Plaintiff,                      **REPORT AND**
                                              **RECOMMENDATION**

       -against-

                                        07 Civ. 4583 (SCR) (GAY)

DR. RENATA KRYMKEVICH,
DR. SHASHIKALA ABKARI,
ROCKLAND PSYCHIATRIC CENTER,
KATE DOLPHIN,[1]

                          Defendants.
-------------------------------------------------------------------X

TO THE HONORABLE STEPHEN C. ROBINSON, United States District Judge:

      Plaintiff Regina Lewis ("Lewis"), proceeding *pro se*, brings this action against

defendants Dr. Renata Krymkevich, Dr. Shashikala Abkari, Rockland Psychiatric Center

("RPC"), and Kate Dolphin.  Construing plaintiff's complaint broadly, she asserts claims

under the United States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and New

York State law.[2]  Presently before this Court are two motions to dismiss, each pursuant

to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure ("FRCP"), submitted

---

[1] The court has corrected the caption to reflect the names of the relevant
defendants as of plaintiff's Second Amended Complaint, Docket # 28.

[2] In an order dated May 31, 2007, then Chief Judge Kimba M. Wood outlined the
manner in which plaintiff must plead her 42 U.S.C. § 1983 claims.  Lewis v. Krymkevich,
07 Civ. 4583, Docket #3.  Judge Wood granted plaintiff leave to amend her complaint to
comply with said pleading requirements.  Id.

by: (1) defendant RPC[3], and (2) defendant Dr. Krymkevich.[4]  For the reasons that follow, I respectfully recommend that defendant RPC's motion to dismiss should be GRANTED in full, and defendant Dr. Krymkevich's motion to dismiss should be GRANTED in full.

## I.  BACKGROUND

The following facts are taken from plaintiff's Second Amended Complaint.  For the purposes of the present motions to dismiss, said facts are presumed to be true.

On March 3 of an unstated year, plaintiff was hospitalized at "Cornwall" hospital[5] where she met with social workers to receive help in securing housing.  On May 3, 2006, Dr. Todd Rochman, medical director of the mental health unit at said hospital, diagnosed plaintiff with "adjustment disorder."

On July 28, 2006, plaintiff was again admitted to St. Luke's Cornwall Hospital, on an involuntary basis.  Plaintiff recently had been evicted and began breaking her personal items within her home.  In response, her sister called the police.  The police then called the "mobile life," which transferred plaintiff to St. Luke's Cornwall Hospital.

---

[3] In her response, plaintiff incorrectly describes said motion as being submitted by both Rockland Psychiatric Center and Dr. Shashikala Abkari.  Pl.'s Response to . . . RPC['s] . . . Mot. to Dismiss . . .  at 1 [hereinafter "Pl.'s Response"].  Dr. Abkari "defer[red] motion practice to the summary judgment stage."  Letter from Jane R. Goldberg, Asst. Attorney Gen., to Judge George Yanthis, U.S.M.J. of the S.D.N.Y. (Nov. 20, 2008) (Docket #41).

[4] Also before this Court is plaintiff's motion to amend her complaint for a third time, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.  The undersigned addresses this motion in a separate order.

[5] Plaintiff refers to St. Luke's Cornwall Hospital as Cornwall, St. Lukes, and St. Lukes Cornwall Hospital.  Hereinafter, the Court refers to the hospital by its proper name, St. Luke's Cornwall Hospital.

Dr. Renata Krymkevich was plaintiff's treating physician at the hospital.  Dr. Krymkevich wanted to treat plaintiff with a mild medication, which plaintiff refused.  Dr. Krymkevich stated to plaintiff that this was the third time she was hospitalized over her inability to secure housing.  Dr. Krymkevich advised that this indicated an underlying mental disorder, and as such, the doctor could get a court order to forcibly administer the drugs to plaintiff.  Plaintiff contends that Dr. Krymkevich refused to recognize her symptoms of post-traumatic stress disorder[6] and that she improved without the drugs.

On August 4, 2006, while plaintiff was still an inpatient at St. Luke's Cornwall Hospital, Dr. Krymkevich petitioned the State of New York Supreme Court of Orange County to treat plaintiff over objection.[7]  Dr. Krymkevich therein diagnosed plaintiff with "Schizophrenia Paranoid Type."  Plaintiff asserts that Dr. Krymkevich made false statements on said Petition, including: (1)  that plaintiff was not at an additional risk to extra-pyramidal syndrome;[8] (2) regarding plaintiff's competence, diagnosis, and condition; (3) that plaintiff needed treatment with Haldol and Depakote when milder drugs could work; and (4) that medications could control Tardive Dyskinesia.  Plaintiff also states that Dr. Krymkevich ignored her fears and concerns regarding the side

---

[6] Plaintiff states that she suffered from "PTSD" which the Court understands to mean post-traumatic stress syndrome.  For clarity, the Court uses the latter.

[7] Plaintiff states that the date of Dr. Krymkevich's petition is August 9, 2006. However, plaintiff submitted a copy of the Verified Petition For Treatment Over Objection ("Petition") and it is actually dated August 4, 2006.  Pl. Ex. A.

[8] Plaintiff states that extra-pyramidal syndrome is Tardive Dyskinesia.  The Court notes that, contrary to plaintiff's submission, Dr. Krymkevich admits on the Petition that extra-pyramidal syndrome is a "reasonably foreseeable adverse effect[]" of the proposed forced treatment.  Pl. Ex. A.

effects of Tardive Dyskinesia and her allergy to Haldol.  Based on Dr. Krymkevich's statements in the Petition, the state court granted treatment over plaintiff's objection.

Dr. Krymkevich then administered the drugs Haldol and Depakote to treat plaintiff.  Depakote can cause, among other maladies, seizures, breast cancer, and anemia.  Haldol's side effects can include neurological damage, suicidal thoughts, psychological disorders, depression, menstrual disorders, vaginitis, abnormal thyroid function, and polycystic ovary disease.  Both drugs also can cause kidney and liver disease.  One or both drugs can also cause Tardive Dyskinesia.  Plaintiff was at a heightened risk for some of these side effects because she has a family history of cancer and is anemic.

While plaintiff took Haldol and Depakote, she suffered from some of said side effects.  She experienced painful, burning urination; painful, abnormal menstrual cycles; the possibility of sterility; untreated abdominal pain; abnormal appetite; increased anxiety; obesity; nausea; restlessness; restless leg syndrome; rigid neck and shoulders; catatonia; burning and stinging of the eyes; glaucoma; and hair loss.  Plaintiff complained to Dr. Krymkevich and the nurses, but her treatment continued.  She either was forced to take the drugs by cooperation, or injected "with something far worse."

To treat these side effects, Dr. Krymkevich prescribed Artane to plaintiff.  Plaintiff then suffered further side effects.  Artane caused her to endure severe vision loss, stinging of the eyes, glaucoma, delusions, hallucinations, paranoia, and auditory sounds in her ears.  Plaintiff also contends that Dr. Krymkevich used Artane to deceive her regarding the risks involved with taking Depakote and Haldol.

Dr. Krymkevich planned to prescribe Risperdol to plaintiff upon her stabilization.

4

However, plaintiff did not stabilize and was instructed to continue taking Haldol and Depakote.  On September 13, 2006, Dr. Krymkevich went back to court to continue to treat plaintiff over objection.  Plaintiff contends that the doctor submitted "more false information regarding [her] diagnosis, competence, and the drugs['] uses and benefits." Plaintiff remained at St. Luke's Cornwall Hospital until September 21, 2006.  She then was transferred to RPC.

Plaintiff contends that she was transferred to RPC without a court order.  During her stay, however, Dr. Shashikala Abkari, plaintiff's treating physician at RPC, insisted she was there under a court order.  Dr. Abkari continued Dr. Krymkevich's treatment without reevaluating plaintiff.  Plaintiff again complained to nursing staff, including Kate Dolphin, that she was suffering uncomfortable side effects.  Specifically, she complained of hair loss, painful urination, vision loss with stinging of the eyes, glaucoma, candidiasis, being over-sedated, skin rashes, increased anxiety, restlessness, chronic nausea, abnormal weight gain, and catatonia.  The nurses ignored her complaints.  Thus, plaintiff tried to refuse the medications.  As a result, the staff denied her privileges such as going to the vending machine, being able to order Chinese food on Saturdays, and daily access to the courtyard.  Ms. Dolphin and Dr. Abkari also threatened plaintiff that she would "never go home" if she refused to take the medication.  Ms. Dolphin further threatened plaintiff that she would receive injections because her complaining interfered with the nurse's lunch.

Plaintiff asserts that RPC was not a place for someone suffering from post-traumatic stress syndrome, as plaintiff argues was her situation.  It "was more of a shelter for the homeless who were housed and treated like cattle instead of a hospital."

5

Plaintiff was spit on and assaulted twice by a patient with AIDS.  She had to sit on uncomfortable chairs for 14.5 hours per day because she was locked out of her room from 6:00 a.m. until 8:30 p.m.  She had no privacy unless she was in her room.  Further, the showers smelled of urine.  She contends that the staff were incapable of dealing with the patients' medical conditions and merely restrained them for injections.

Plaintiff was released from RPC on November 17, 2006.  A few days later, on November 23, 2006, plaintiff had her blood levels checked at St. Luke's Cornwall Hospital.  The results indicated she had a high level of Depakote in her system, indicating that she was over-dosed.  She was referred to a psychologist to address her symptoms of Tardive Dystonia and Tardive Dyskinesia.  Plaintiff also learned that said symptoms would progress over months and years, and said conditions were not treatable.

Plaintiff contends that Drs. Krymkevich and Abkari recklessly prescribed Depakote, Haldol, and Artane, and deliberately ignored the reactions she suffered from them.  Specifically, plaintiff received dosages of said drugs above the manufacturers' recommendations.  This "tripled" plaintiff's chance of experiencing the reactions from which she suffered.  Allegedly according to the Physician's Desk Reference, any of the reactions plaintiff experienced warranted the discontinuance of her taking the drugs.  Further, the Physician's Desk Reference allegedly states that Depakote should be used as a "sole agent."  Nonetheless, Dr. Krymkevich and Dr. Abkari continued to force the three medications upon plaintiff.

Plaintiff suffers from asthma, requiring the use of an inhaler.  She also has a heart murmur.  Yet, the Physician's Desk Reference allegedly suggests that Artane

should not be taken while using inhalers.  Furthermore, none of the drugs should be prescribed if a patient suffers an irregular heartbeat.  As a result of these contraindications and plaintiff's forced treatment, she suffered severe heart palpitations. Another doctor prescribed heart medication, but plaintiff's condition did not change.

Plaintiff also asserts that Drs. Krymekvich and Abkari failed to properly evaluate her condition and thus treat her accordingly.  Plaintiff's life situations, including homelessness, financial loss, and child custody issues, supported plaintiff's position of having post-traumatic stress syndrome.  Yet, the doctors did not believe her and found her delusional.  The drugs Drs. Krymkevich and Abkari forced upon plaintiff were unsuitable for her self-perceived medical condition.  As a result, plaintiff suffered from the aforementioned side effects and left her in worse medical condition than she had been in before July 28, 2006.

Plaintiff filed this present action on May 31, 2007.  On July 11, 2007, plaintiff filed an Amended Complaint.  She filed a Second Amended Complaint on February 19, 2008.

## II.  MOTION TO DISMISS STANDARD

Pursuant to FRCP 12(b)(1), a court must dismiss a claim if the court "lacks jurisdiction over the subject matter."  In deciding a 12(b)(1) motion to dismiss, this Court must assume the truth of the factual allegations set forth in the complaint.  See Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citation omitted).  The plaintiff has the burden of proving the court's jurisdiction by a preponderance of the evidence.  See id.

In evaluating a motion to dismiss a complaint under FRCP 12(b)(6), this Court is

"not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). In doing so, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). Ultimately, the Court must grant a 12(b)(6) motion to dismiss if the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted). The court must analyze the complaint under a two-pronged approach: (1) determine which statements are well-pleaded factual allegations and assume their veracity, and (2) "then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950. Statements deemed "legal conclusions" rather than factual allegations are not entitled to the assumption of truth. Id. at 1950-51.

For purposes of evaluating a 12(b)(6) motion, the complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quotation and citation omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Id. at 153 (quotation and citation omitted).

8

Further, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). *Pro se* complaints and supporting papers must be read "liberally" and interpreted to "raise the strongest arguments that they suggest." See Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (quotation and citation omitted).

## III. CLAIMS AGAINST ROCKLAND PSYCHIATRIC CENTER

Reading plaintiff's complaint broadly, plaintiff appears to claim that RPC (1) forcibly treated her with Depakote, Haldol, and Artane without independently assessing her medical condition; (2) kept her in the hospital against her will and without a court order; (3) treated her with medication inappropriate for her then-present medical need and medical history; (4) caused her to suffer several side effects which were ignored by staff; and (5) [staff] threatened her with injections and denied her privileges when she complained of her discomfort. Plaintiff's complaints may be characterized as (1) violations of her constitutional and civil rights, actionable pursuant to 42 U.S.C. § 1983; (2) a conspiracy with Dr. Krymkevich to violate said rights, actionable pursuant to 42 U.S.C. § 1985; (3) false imprisonment, negligence, and malpractice, actionable pursuant to New York State law; and (4) cruel and unusual punishment in violation of the Eighth Amendment, actionable pursuant to 42 U.S.C. § 1983.[9] RPC contends that, insofar as plaintiff seeks monetary compensation for her claims, it is entitled to immunity

---

[9] To the extent that plaintiff's response paper alludes to a discrimination claim on the basis of her mental disability, said allegation was not pleaded in her Second Amended Complaint. Pl.'s Response at 2; Second Amended Complaint. Plaintiff may not assert the claim now. Furthermore, said claim—that her treatment was "possibly discriminative"—is merely a legal conclusion. Pl.'s Response at 2. As such, it also fails to meet the pleading requirements mandated by Twombly and Iqbal. See supra § II.

under the Eleventh Amendment because it is an arm of New York State.  Furthermore,
RPC argues that plaintiff's Eighth Amendment claim must fail because plaintiff's
confinement at RPC was not pursuant to a criminal conviction.

As a general rule, the Eleventh Amendment affords state governments immunity
from state-law and federal claim lawsuits in federal courts.  Greenwood v. New York,
939 F. Supp. 1060, 1065 (S.D.N.Y. 1996), *aff'd in part*, *vacated in part*, 163 F.3d 119
(2d Cir. 1998).  "Eleventh Amendment immunity extends to 'state agents and state
instrumentalities that are, effectively, arms of a state.'"  Gorton v. Gettel, 554 F.3d 60,
62 (2d Cir. 2009) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466
F.3d 232, 236 (2d Cir. 2006)).  Said immunity is in effect unless the state waived, or
Congress abrogated, the immunity.  Greenwood, 939 F. Supp. at 1065 (citation
omitted).  "'Waiver of Eleventh Amendment immunity . . . is triggered by some
affirmative activity of a state, such as a state's enactment of legislation by which it
consents to be sued in federal court.'"  Id. (quoting *In re* 995 Fifth Ave. Assocs., L.P.,
963 F.2d 503, 507 (2d Cir. 1992), *cert. denied*, 506 U.S. 947 (1992)).  Congress
abrogates Eleventh Amendment immunity when it makes its intent to do so
"unmistakably clear" and "'the constitutional provision under which Congress legislates
its purported abrogation must grant Congress the power to override the Eleventh
Amendment.'"  Id. (quoting *In re* 995 Fifth Ave. Assocs., L.P., 963 at 507).

The party seeking immunity has the burden to demonstrate that it is an arm of
the state.  Gorton, 554 F.3d at 62 (citation omitted).  In making such a determination,
the court must consider:

(1) how the entity is referred to in its documents of origin; (2) how the

10

> governing members of the entity are appointed; (3) how the entity is
> funded; (4) whether the entity's function is traditionally one of local or state
> government; (5) whether the state has a veto power over the entity's
> actions; (6) whether the entity's financial obligations are binding upon the
> state.

Id. (quoting McGinty v. New York, 251 F.3d 84, 95-96 (2d Cir. 2001)).  If the factors

suggest different outcomes, "'a court must ask whether a suit against the entity in

federal court would threaten the integrity of the state and expose its treasury to risk.'"

Id.  (quoting McGinty, 251 F.3d at 96).  "'If the answer is still in doubt, a concern for the

state fisc will control.'"  Id. (quoting McGinty, 251 F.3d at 96).

RPC is a psychiatric facility established by New York State within the Office of

Mental Health.  N.Y. Mental Hyg. Law § 7.17.  OMH is an agency of New York State,

created by the New York legislature with the purpose of carrying out the State's policies

with regards to its mentally ill citizens.  Id. § 7.01.  Its commissioner is a "state officer"

whose salary is set by New York law.  N.Y. Exec. Law § 169.  The commissioner must

turn over all of OMH's obligations and certain deposits to New York's comptroller.  N.Y.

Mental Hyg. Law § 7.31(a)(1).  Other deposits must be turned over to New York's

commissioner of taxation and finance.  Id. § 7.31(a)(2).  The comptroller also audits the

agency.  See N.Y. Exec. Law § 170.  Furthermore, the State defends and indemnifies

those persons who render "professional treatment authorized under [their professional]

license at the request of the office . . . ."  See N.Y. Mental Hyg. Law § 7.35.  Thus, RPC

is an arm of the State and immune from suit in federal court pursuant to the Eleventh

Amendment.  See Greenwood, 939 F. Supp. at 1065 (citations omitted) (psychiatric

facilities established within OMH enjoy Eleventh Amendment immunity).

Furthermore, plaintiff has not submitted any authority supporting a position that

New York State, OMH, or RPC waived their Eleventh Amendment immunity.  See id.

(finding no waiver of immunity where plaintiff failed to present authority of such waiver).

Plaintiff also has not submitted authority demonstrating that Congress abrogated

immunity in the context herein.  Moreover, 42 U.S.C. § 1983 itself "does not represent a

congressional abrogation of this Eleventh Amendment immunity."  Id. (citation omitted).

Therefore, RPC is entitled to Eleventh Amendment immunity.  As such

defendant's and plaintiff's further contentions regarding plaintiff's Eighth Amendment

cruel and unusual punishment claim are moot.  Accordingly, I respectfully recommend

that all of plaintiff's federal and state claims against defendant Rockland Psychiatric

Center should be dismissed.

## IV.  CLAIMS AGAINST DR. KRYMKEVICH

Reading plaintiff's complaint broadly, plaintiff appears to claim that Dr.

Krymkevich (1) incorrectly identified and/or falsified plaintiff's medical condition and thus

forced "serious," "lethal" drugs upon her; (2) prescribed Haldol to plaintiff even though

she knew plaintiff was allergic to said drug; (3) caused plaintiff to suffer several negative

side effects as a result of forcibly treating her with Depakote, Haldol, and Artane; (4)

failed to address plaintiff's concerns and discomfort with regards to the negative side

effects; (5) failed to warn plaintiff of the side effects of Depakote, Haldol, and Artane; (6)

prescribed said drugs in doses and combinations with other drugs against the

recommended usage; (7) kept her in St. Luke's Cornwall Hospital against her will by

"lying" in the Petition to a state court; and (8) conspired with RPC to keep her

hospitalized against her will and without a court order.  Plaintiff's complaints may be

characterized as (1) violations of her constitutional and civil rights, actionable pursuant

to 42 U.S.C. § 1983; (2) a conspiracy with RPC to violate said rights, actionable

pursuant to 42 U.S.C. § 1985; and (3) false imprisonment, negligence, and malpractice,

actionable pursuant to New York State law.  Dr. Krymkevich contends that she is not a

state actor and cannot be deemed a state actor, therefore plaintiff's § 1983 [and § 1985]

claims must be dismissed.  As to plaintiff's pendant state claims, Dr. Krymkevich

requests that this Court decline supplemental jurisdiction.

> A.  Federal Claims

> > 1.  42 U.S.C. § 1983 Claims

Section 1983 provides that "[e]very person who, under the color of [law] . . .

subjects, or causes to be subjected, any citizen of the United States or other person

within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. §

1983.  In order to state a claim under § 1983, "the plaintiff must satisfy two essential

elements: (1) the defendant acted under color of state law; and (2) as a result of the

defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her

constitutional rights or privileges."  Turturro v. Cont'l Airlines, 334 F. Supp. 2d 383, 391-

92 (S.D.N.Y. 2004) (citing Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir.

1998)).  It is well-established that involuntary commitment, or civil commitment,

"constitutes a significant deprivation of liberty requiring due process protection."

Okunieff v. Rosenberg, 996 F. Supp. 343, 348 (S.D.N.Y. 1998) (citing Addington v.

Texas, 441 U.S. 418, 425 (1979)).  Thus, the issue here is whether Dr. Krymkevich, a

private physician, can be considered a state actor, acting under the color of law.

In order to determine if state action is present, "the inquiry must be whether there

is a sufficiently close nexus between the State and the challenged action so that the action of the latter may be fairly attributed to the State itself." <u>Jackson v. Metro. Edison Co.</u>, 419 U.S. 345, 351 (1974). "The Supreme Court has developed a number of approaches to determine whether a private party's conduct may constitute state action, including (1) the state compulsion test, (2) the close nexus test[10], and (3) the public function test." <u>Addington</u>, 441 U.S. at 425. By itself, a private doctor acting pursuant to New York's Mental Hygiene Law to involuntarily commit a person does not constitute state action. <u>Okunieff</u>, 996 F. Supp. at 349-357. Moreover, a private doctor's decisions which "ultimately turn on medical judgments . . . according to professional standards . . . not established by the State" do not amount to state action. <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1008-12 (1982).

Plaintiff attempts to satisfy the state action requirement by establishing a close nexus between Dr. Krymkevich and RPC, demonstrated by the custom and usage by which she regularly transfers patients to said facility. <u>See</u> Pl.'s Supp. Resp. to Def.'s Mot. to Dismiss at 1 [hereinafter "Pl.'s Supp. Resp."]. In order to succeed on said claim, plaintiff must submit factual evidence to demonstrate "that the State had so far insinuated itself into a position of interdependence with [Dr. Krymkevich] that it was a joint participant in the enterprise." <u>Jackson</u>, 419 U.S. at 357-58. In addition, plaintiff must submit factual evidence demonstrating that RPC is so involved in Dr. Krymkevich's decision-making to transfer patients to RPC that it overrides the doctor's independent,

---

[10] This test is also referred to as "joint action" or a "symbiotic relationship." <u>See</u> <u>Okunieff</u>, 996 F. Supp. at 352 (joint action); <u>Jackson</u>, 419 U.S. at 357 (symbiotic relationship).

medical judgment.  See Jensen v. Lane County, 222 F.3d 570, 575 (9th Cir. 2000) (in the context of Blum, 457 U.S. at 1008-12, finding a "complex and deeply intertwined process" between a private doctor and the state to be state action).

Here, plaintiff concludes that Dr. Krymkevich's "custom and usage" is to regularly transfers patients to RPC.  Pl.'s Supp. Resp. at 1.  Assuming, arguendo, that such practice would suffice to establish state action, plaintiff offers no evidence of its frequency or regularity.  Plaintiff only describes her single experience of when Dr. Krymkevich transferred her to RPC.  This one instance is insufficient to establish "willful participation in joint activity with the State."  Dove v. City of New York, No. 03 Civ. 5052, 2005 WL 2387587, at *4 (E.D.N.Y. Sept. 28, 2005) (finding that a private entity causing "an individual to be transported to a State-run psychiatric facility for evaluation"does not establish state action).[11]

Alternatively, construing plaintiff's complaint to raise the strongest arguments it suggests, plaintiff alleges that Dr. Krymkevich acted in concert with RPC to deprive her of her rights.  See Koulkina v. City of New York, 559 F. Supp. 2d 300, 318 (S.D.N.Y. 2008).  In order to state a claim of conspiracy under § 1983, plaintiff must allege (1) an agreement between the state actor (RPC) and private party (Dr. Krymkevich); "'(2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'"  Hernandez v. Goord, 312 F. Supp. 2d 537, 546 (S.D.N.Y. 2004) (quoting Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002)).  A plaintiff's pleadings must demonstrate concerted action, that the two

---

[11] The Court has attached a copy of this and any other unreported decisions herein for *pro se* plaintiff's access.

parties had a meeting of the minds to deprive plaintiff of her rights.  <u>Chodkowski v. City of New York</u>, No. 06 Civ. 7129, 2007 WL 2717872, at *10 (S.D.N.Y. Sept. 11, 2007) (citations omitted).  Because of the secretive nature of conspiracies, plaintiff may assert circumstantial, rather than direct, evidence to substantiate her claim.  <u>See</u> <u>Hernandez</u>, 312 F. Supp. 2d at 546 (citation omitted).  However, the complaint must contain more than mere conclusory allegations.  <u>Dwares v. City of New York</u>, 985 F.2d 94, 99 (2d Cir. 1993).

Here, plaintiff states that Dr. Krymkevich transferred her from St. Luke's Cornwall Hospital to RPC without a court order, and the latter facility kept plaintiff hospitalized for about one month without a court order.  At RPC, Dr. Abkari failed to reevaluate plaintiff and "simply used Dr. Krymkevichs [sic] diagnosis."  Second Amended Complaint ¶ 14.  However, said statements are insufficient to infer that RPC and Dr. Abkari had an agreement to act in concert with each other to deprive plaintiff of her constitutional rights.  Plaintiff failed to plead with any specificity the time, place, or intentions of a conspiracy.  <u>See</u> <u>Jessamy v. City of New Rochelle, N.Y.</u>, 292 F. Supp. 2d 498, 513, n.18 (S.D.N.Y. 2003) (quoting <u>Dwares</u>, 985 F.2d at 100) (even with simplified notice pleadings requirements, conspiracy claim held insufficient for failure to "'provide some details of time and place and the alleged effect of the conspiracy.'").  <u>Cf.</u> <u>Pangburn v. Culbertson</u>, 200 F.3d 65, 72 (2d Cir. 1999) (finding requisite specificity to support a § 1983 conspiracy claim; <u>Hernandez</u>, 312 F. Supp. 2d at 546 (specific instances of conduct could be construed as violating plaintiff's rights, "satisfying the requirement for an unconstitutional injury and overt acts in furtherance of that injury" in support of a conspiracy claim).

### 2.   *42 U.S.C. § 1985 Claim*

The Court also construes plaintiff to allege that Dr. Krymkevich conspired with RPC to violate her rights pursuant to 42 U.S.C. § 1985(3) by concocting a medical treatment regime of over-medication and unlawful, involuntary commitment on the basis of her milder mental condition, socio-economic status, and race.  Section 1985(3) reads in part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

The four elements of a § 1985(3) claim are: (1) conspiracy between two or more persons; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privilege and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  In addition, the plaintiff must show that the discrimination was motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus." Id. at 1088 (citations omitted).

As stated above, plaintiff submits insufficient evidence of a conspiracy.  In addition, plaintiff only asserts conclusory statements that the alleged deprivation of her rights was a result of her mental condition, socio-economic status, and race.  Plaintiff's

Second Amended Complaint is devoid of evidence that would support an inference that Dr. Krymkevich and RPC invidiously discriminated against plaintiff.  Absent such an inference, plaintiff has failed to meet her burden to provide factual evidence to suggest the plausibility of her 42 U.S.C. ¶ 1985 claim.  See Turturro, 334 F. Supp. 2d at 397 (denying plaintiff's § 1985 claim because plaintiff failed to allege specific facts of said claim).

Accordingly, the Court concludes that plaintiff's claims that (1) Dr. Krymkevich is a state actor, and (2) Dr. Krymkevich conspired with RPC in violation of 42 U.S.C. §1983 and § 1985, fail.  Thus, I respectfully recommend that Dr. Krymkevich's motion to dismiss should be granted with respect to (1) plaintiff's § 1983 "state action" claim; (2) plaintiff's § 1983 conspiracy claim; and (3) plaintiff's § 1985 conspiracy claim.

B.  State Claims

As a result of the dismissal of all of plaintiffs' federal causes of action, it is respectfully recommended that the Court should decline to exercise its supplemental jurisdiction over plaintiffs' state causes of action.  28 U.S.C. § 1367(c)(3); Travelers Ins. Co. v. Keeling, 996 F.2d 1485, 1480 (2d Cir. 1993).

V.  CONCLUSION

For all of the foregoing reasons, I conclude, and respectfully recommend, that defendant RPC's motion to dismiss should be GRANTED as to all of plaintiffs' claims; and (2) defendant Dr. Krymkevich's motion to dismiss should be GRANTED as to all of plaintiff's claims.

## VI. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(B), as amended, and Rule 72(b), Fed. R. Civ. P., the parties shall have ten (10) days from receipt of this Report  to serve and file written objections to this Report and Recommendation.  If copies of this Report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections.  See Fed. R. Civ. P. 6(d).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Stephen C. Robinson and not to the undersigned.

Dated:   September          , 2009
       White Plains, New York

Respectfully Submitted:

GEORGE A. YANTHIS, U.S.M.J.

19